In re Steinar PEDERSEN, Debtor.

Bankruptcy No. 98–96384–A–13.

United States Bankruptcy Court,
E.D. California,
Modesto Division.

Jan. 22, 1999.

Anthony Drew Rowe, Modesto, California, for the chapter 13 debtor.

## MEMORANDUM DECISION

MICHAEL S. McMANUS, Bankruptcy Judge.

Before the court are two ex parte applications by the chapter 13 debtor and his counsel requesting confirmation of a chapter 13 plan and approval of $1,500.00 in attorneys' fees. The applications will be denied.

### I. Facts

On December 23, 1998, the debtor filed a chapter 13 petition. His petition was accompanied by the schedules and statement of financial affairs but not the proposed chapter 13 plan. The schedules list no secured claims, $2,250.00 in priority tax claims, and $2,302.97 in general unsecured claims.

Also filed with the petition were two documents entitled "Application for Confirmation of Plan and Petition for Allowance of Attor-ney's Fees" and "Application/Order for Fees." Neither application was served on any party in interest and neither was set for hearing. The applications request confirmation of the plan and approval of counsel's fee.

In the two applications, the debtor and his counsel represent that a plan has been filed, that notice of a confirmation hearing has been given, that the proposed plan satisfies the requirements of 11 U.S.C. §§ 1322 and 1325(a), that the debtor attended a meeting of creditors, that the debtor's attorney received no pre-petition retainer or payment of fees, and that "the reasonable value of services and costs rendered by [debtor's counsel] is the sum of $1,500.00." The applications are signed by the debtor's counsel but not the debtor.

The representations contained in the two applications are obviously inaccurate. When the applications were filed on December 23, 1998, no plan had been filed, notice of the confirmation hearing had not been given, and the debtor had not attended the first meeting of creditors. While counsel may not have collected any fees for work done in connection with the petition, it is doubtful he had performed $1,500.00 worth of services as of the day the case was filed. At any rate, the applications are not accompanied by any contemporaneous time records or a narrative detailing counsel's services and time.

On January 13, 1999, the debtor tardily filed a proposed chapter 13 plan. Fed. R.Bankr.P. 3015(b). The plan proposes a monthly payment of $100.00 and payment in full of the priority tax claims. The plan fails to state whether any dividend will be paid to general unsecured creditors. The plan also fails to state its length.

### II. Discussion

On December 12, 1997, the bankruptcy judges of the Sacramento and Modesto Divisions of the Eastern District of California issued a general order regarding chapter 13 practice. *See* General Order 97–02. This general order applies to all chapter 13 cases filed after January 1, 1998.

A

· The general order makes provision for, among many other things, approval of fees for attorneys representing chapter 13 debtors. Paragraph 4 of the general order provides:

(a) Any attorney who is retained to represent a debtor in a chapter 13 case is responsible for representing the debtor on all matters arising in the case, including, without limitation, motions for relief from the automatic stay, motions to avoid liens, objections to claims, and adversary proceedings.

(b) Attorneys seeking to withdraw from representation of a debtor shall comply with Rule 182 of the Local Rules of the United States District Court, Eastern District of California.[1]

(c) Compensation paid to attorneys for the representation of debtors shall be determined according to the Guidelines for Payment of Attorneys' Fees in Chapter 13 Cases and, where applicable, the Guidelines for Compensation and Expense Reimbursement of Professionals.

(d) After the filing of the petition, a debtor's attorney shall not accept or demand from the debtor any payment for services or cost reimbursement without first obtaining a court order authorizing the fees and/or costs and specifically permitting direct payment of those fees and/or costs by the debtor.

Paragraph 4(c) makes the court's "Guidelines for Payment of Attorneys' Fees in Chapter 13 Cases" (hereafter "chapter 13 fee guidelines") and "Guidelines for Compensation and Expense Reimbursement of Professionals" (hereafter "general fee guidelines") applicable in chapter 13 cases, except as noted below.

**1.** Local District Court Rule 182(b) prohibits an attorney's withdrawal from a case absent court approval if the withdrawal would leave the client *in propria persona.*

**2.** This agreement spells out in plain English the duties and obligations of the chapter 13 debtor and the attorney both before and after the filing of a chapter 13 petition. Like the chapter 13 fee guidelines, the Rights and Responsibilities agree-

1

· The chapter 13 fee guidelines lay out a streamlined procedure for approval of attorneys' fees in connection with the confirmation of chapter 13 plans. They aim to provide reasonable compensation in typical chapter 13 cases with a minimum of paperwork and judicial involvement and, at the same time, coordinate approval and payment of attorneys' fees with confirmation of a plan that makes fair provision for the payment of creditors.

■ Compliance with the chapter 13 fee guidelines is optional. Any attorney may choose to be compensated on terms and conditions that do not comply with the chapter 13 fee guidelines. These guidelines provide:

An attorney may decline to seek approval of compensation pursuant to these Guidelines. If an attorney so declines, his or her compensation shall be disclosed, reviewed, and approved in accordance with applicable authority including, without limitation, 11 U.S.C. §§ 329 and 330, Fed. R.Bankr.P.2002, 2016, and 2017, and the "Guidelines for Compensation and Expense Reimbursement of Professionals" adopted by the Bankruptcy Judges of the Eastern District of California. This authority requires, at a minimum, that payments on account of post petition services be held in trust until the court approves the fees and expenses of the attorney.

Those attorneys electing to have their fees approved pursuant to the chapter 13 fee guidelines and in connection with confirmation of a plan are required to:

● File an executed copy of the "Rights and Responsibilities of Chapter 13 Debtors and their Attorneys" (hereafter "Rights and Responsibilities agreement").[2]

● Limit their fees to no more than $1,750.00 in nonbusiness cases and $3,000.00 in business cases.[3]

ment was originally promulgated in the Northern District of California and later adopted (or, more accurately, copied without attribution) by the Sacramento and Modesto Divisions of the Eastern District of California.

**3.** It is anticipated that the maximum fees and retainers permitted under the chapter 13 fee guidelines will, from time to time, be modified by the court.

- Limit their pre-petition retainers to $750.00 in nonbusiness cases and $1,500.00 in business cases.[4]
- Receive payment of their fees through the plan at the lesser of $200.00 per month or 50% of the debtor's monthly plan payment. Payments begin the month following plan confirmation and are made concurrently with payments to other creditors.
- No fee application is required.

In the event the fee approved pursuant to the chapter 13 fee guidelines is insufficient to fully and fairly compensate a debtor's attorney, he or she may file a motion requesting additional fees. In such a motion, the attorney must attach contemporaneous time records and demonstrate that the fee allowed by the chapter 13 fee guidelines was not sufficient in view of the amount or complexity of the work undertaken for the debtor. If this is established, additional compensation will be awarded.

■ Compensation paid to the attorney for a chapter 13 debtor must be reasonable considering the benefit to the debtor and the necessity of the services. 11 U.S.C. § 330(a)(4)(B). Section 330(a)(4)(B) provides:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

The chapter 13 fee guidelines are nothing more than a presumption that compensation is reasonable if paid in the amounts and in the manner prescribed by the guidelines. The court or any party in interest may reject this presumption and compel the attorney to file a conventional fee application and prove that his or her fees are reasonable.[5]

This is not an unusual chapter 13 compensation scheme. The chapter 13 fee guidelines were drawn from nearly identical guidelines used in the Northern District of California. Other bankruptcy courts have adopted local rules and general orders specifying a range of fees that are presumptively reasonable and a streamlined procedure for their approval. *See e.g., In re Thorn*, 192 B.R. 52, 54–56 (Bankr.N.D.N.Y.1995); *In re Zwern*, 181 B.R. 80, 85–86 (Bankr.D.Colo. 1995); *In re Orris*, 166 B.R. 935 (Bankr. W.D.Wash.1994). In many courts, custom and practice provide guidance on these issues. Keith M. Lundin, *Chapter 13 Bankruptcy* § 1.33, p. 1–118 to 1–119 (2d ed. 1994) ("In most jurisdictions there is a custom or tolerance for Chapter 13 attorneys' fees up to some specific amount. The Chapter 13 trustee and counsel who regularly represent debtors in Chapter 13 cases know the magic amount and know that a fee request up to that amount will not be challenged in the typical case. Fees in excess of the tolerated level are treated differently and may require separate application with itemization and a hearing.").

Nor is it uncommon for fees to be paid, at least in part, in installments and concurrently

---

4. The chapter 13 fee guidelines do not prohibit the payment of larger pre-petition retainers. But, if a retainer larger that $750.00 in a consumer case or $1,500.00 in a business case is paid, the court and the trustee will "closely scrutinize" the fee arrangement to determine if circumstances warrant a conventional fee application rather than approval of the retainer and fees pursuant to the chapter 13 fee guidelines.

5. The chapter 13 trustee and all creditors are given notice that an attorney is requesting fees pursuant to the chapter 13 fee guidelines by inclusion of the amount of the fees in the form chapter 13 plan made mandatory by General Order 97–02. The plan is served on all creditors with notice of the first meeting of creditors. Any objection to approval of fees as part of the confirmation process must be filed with the court and served on the debtor and the debtor's attorney no later than 14 days after the conclusion of the first meeting of creditors. The objection need only recite that the party in interest objects to approval of fees in connection with confirmation of a plan. No substantive objections to the compensation requested by the attorney need be raised. No hearing will be held on the objection. Instead, the objection requires the attorney to file and serve the fee application required by Fed. R.Bankr.P.2016(a) to obtain approval of his or her fees. Substantive objections to the attorneys' fees must be filed in response to the fee application.

with the claims of creditors. "Some jurisdictions permit debtor's counsel an initial portion of the fee, either in a fixed dollar amount or a percentage of the total fee, and then future installments dependent on the debtor's payments into the plan. A few courts permit attorneys' fees in Chapter 13 cases as a percentage of payments made into the plan, with or without a limit or relationship to the actual services rendered." *Id.*

### 2

If an objection to approval of fees pursuant to the chapter 13 fee guidelines is filed and served, the attorney, like the attorney opting out of the guidelines, must obtain judicial approval of his or her fees apart from the chapter 13 plan confirmation process. Judicial approval is dictated by section 330(a)(4)(B), which requires the court to "allow" reasonable compensation.

When attorneys opt out of the chapter 13 guidelines, they most often request either a flat fee that is higher than permitted by the chapter 13 fee guidelines or a retainer against which the attorney may deduct fees, calculated on a "lodestar" basis (a reasonable hourly rate multiplied by the hours reasonably expended). *In re Manoa Fin. Co., Inc.*, 853 F.2d 687, 690–92 (9th Cir.1988). Other fee arrangements are possible.[6] *See* 11 U.S.C. § 328(a).

■ To obtain court approval of attorneys' fees outside of the chapter 13 fee guidelines, a fee application must be filed. *In re Orris*, 166 B.R. at 938. Rule 2016(a) prescribes the contents of that application:

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application

for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case. . . .

■ This court's general fee guidelines also apply to fee applications. These guidelines require that time records report time in tenths of an hour and give detailed descriptions of the services performed. They also include a series of rebuttable presumptions regarding reimbursable costs, travel time, and hourly rates.[7]

Assuming the fee application requests compensation exceeding $500.00, the application must be set for hearing on 22 days' notice[8] to all creditors, the chapter 13 trustee, and the United States Trustee. Fed. R.Bankr.P.2002(a)(6) & (k) and 9034.

■ Until the court has approved a fee application, any pre-petition retainer, flat fee, or advance payment of fees for post-petition services must be held in trust. *In re C & P Auto Transport, Inc.*, 94 B.R. 682, 686 (Bankr.E.D.Cal.1988). No fees may be paid after the filing of the petition until the court has approved the requested compensation. *See* General Order 97–02, ¶ 4(d).

### 3

■ Fees awarded to attorneys representing chapter 13 debtors are administrative expenses. 11 U.S.C. §§ 503(b)(2). As such,

---

6. For example, the court might approve a fee agreement requiring the debtor to maintain a retainer of a minimum amount in the attorney's trust account throughout the pendency of the case. Draws on the retainer, however, would require a fee application.

7. The provision in the general fee guidelines regarding prior approval of employment is not applicable in chapter 13 cases. There is no

requirement that the court approve the employment of counsel for a chapter 13 debtor. *See In re Bell*, 212 B.R. 654, 656 (Bankr.E.D.Cal.1997).

8. Fed.R.Bankr.P.2002(a) requires a minimum of 20 days' notice. However, the Local Bankruptcy Rules for the Eastern District of California require a minimum of 22 days' notice. *See* Local Rule 9014–1(m).

they are entitled to payment as a first tier priority claim. 11 U.S.C. § 507(a)(1). While section 1322(a)(2) permits priority claims to be paid in deferred cash installments, section 1326(b)(1) modifies this general rule. 11 U.S.C. §§ 1322(a)(2) & 1326(b)(1). Attorneys' fees must be paid "[b]efore or at the time of each payment to creditors under the plan . . . ."

Courts interpreting section 1326(b)(1) are divided into two camps. Some courts hold that section 1326(b)(1) does not require attorneys' fees to be paid in full before all other claims. Instead, plan payments may be apportioned between attorneys' fees and other administrative expenses and secured and unsecured claims, provided that payment of the administrative expenses commences "no later than the first payment to other creditors . . . ." *In re Parker*, 15 B.R. 980 (Bankr. E.D.Tenn.1981), *affirmed*, 21 B.R. 692 (E.D.Tenn.1982). *See also In re Lanigan*, 101 B.R. 530 (Bankr.N.D.Ill.1986).

Other courts interpret section 1326(b)(1) to require payment in full of all administrative expenses before any claims are paid through the plan. *In re Tenney*, 63 B.R. 110, 111 (Bankr.W.D.Okla.1986); *Shorb v. Bishop (In re Shorb)*, 101 B.R. 185, 186–87 (9th BAP Cir. 1989); *In re Hallmark*, 225 B.R. 192, 194 (Bankr.C.D.Cal.1998).

While this court is constrained by *Shorb* to follow the latter line of cases, this does not mean that the chapter 13 fee guidelines contravene the requirements of section 1326(b)(1). Compliance with the chapter 13 fee guidelines is voluntary. If an attorney is willing, pursuant to the chapter 13 fee guidelines, to accept a flat fee, file the Rights and Responsibilities agreement, limit any pre-petition retainer, and accept payment in deferred installments made concurrently with payments to other creditors, the attorney's fee will be, absent objection, approved when the plan is confirmed. This is consistent with *Shorb* which recognized that attorneys may waive their right to payment in full prior to other claims. *In re Shorb*, 101 B.R. at 187.

Also, the fee approved pursuant to the chapter 13 fee guidelines represents compensation for past and future services. Requir-

ing the fee to be paid in installments over a brief period at the beginning of the case is not unreasonable or unfair considering that a portion of the fee is for work yet to be performed.

Nonetheless, if the attorney and the debtor wish to contract for a fee arrangement other than a flat fee, for a higher flat fee or retainer than permitted by the guidelines, or for payment in full prior to other claims, they are free to do so. But, a fee application must be filed, served, and approved by the court before the attorney draws upon a pre-petition retainer for post-petition work, and before the debtor or the trustee pays anything to the attorney after the filing of the petition. Such an application will be considered apart from the plan confirmation process.

There may be a price to pay when an attorney demands payment of fees prior to payment of other creditors. As noted in Judge Jones' dissenting opinion in *Shorb*, the debtor may pay that price:

> [T]he majority's decision here means that the court will have to lift the stay on secured debts in many cases. For example, assume an automobile loan with outstanding balance of $10,000 and vehicle value of $5,000. The plan will typically reduce the debt to the $5,000 value and pay the $5,000 with interest over the term of the plan. Where attorney fees must be paid first, it may mean that no payments to the secured creditor will be made for a substantial period of time. A $5,000 used vehicle might decrease in value by another $1,000 to $1,500 in one year's time. Together with accrual of interest on the $5,000 obligation, that will mean that the secured creditor will become further unsecured by depreciation of his collateral and by the accrual of interest on his $5,000 debt. Consequently, the court would be obligated to deny confirmation of such plan or to lift the stay with respect to the automobile.

*In re Shorb*, 101 B.R. at 187. Therefore, before an attorney asks the court to approve payment of fees to the exclusion of other claims, he or she should give careful consid-

eration to the implications of that request on the debtor's reorganization.

### 4

Counsel's application for approval of $1,500.00 in fees will be denied. It is neither fish nor fowl—it complies with neither the chapter 13 fee guidelines nor with Rule 2016(a) and the general fee guidelines.

#### a

■ If counsel wished to have his fees approved pursuant to the chapter 13 fee guidelines, no fee application was necessary. The court is unable to ignore the application and assume counsel meant to have his fees approved pursuant to those guidelines for two reasons.

First, the debtor and counsel have not signed and filed the Rights and Responsibilities agreement. This agreement is a prerequisite to approval of fees pursuant to the chapter 13 fee guidelines. Without it, the court, the debtor, the trustee, and creditors have no assurance that counsel has agreed to provide the services described in it.

Second, because use of the chapter 13 fee guidelines waives counsel's right under section 1326(b)(1) to receive payment of approved fees prior to all other creditors, the court will not presume he intended to use the guidelines to obtain approval of his fees. His election to proceed under the chapter 13 fee guidelines must be stated in writing.[9]

#### b

■ Counsel's application is also seriously deficient if he is requesting approval of his fees pursuant to Rule 2016(a) and the general fee guidelines. For example, it does not attach contemporaneous time records itemizing the services rendered nor does it state the time expended and counsel's hourly rate.

If the application is requesting a flat fee of $1,500.00 for all services, past and future, rendered in connection with the case, the application is again deficient and raises more questions than it answers. What work has counsel agreed to perform? Is any unpaid balance still owed if the case is dismissed before the fee is paid in full? Does he have the right to request additional compensation under any circumstances? Without such information, the court cannot determine if a $1,500.00 flat fee is reasonable.

Finally, the application was not served on the trustee, creditors, and the United States Trustee as required by Rules 2002(a)(6), 2002(k), and 9034. The court cannot approve a fee application without notice to these parties in interest.

### B

■ The debtor has also presented his proposed plan to the court for confirmation in a rather unorthodox manner. First, his application requested the plan be confirmed before it was filed. Second, creditors have not yet been advised of the commencement of this case. Third, there is no proof of service in the court's file indicating that the plan has been served on the trustee and creditors. Fourth, the first meeting of creditors has yet to be scheduled. Thus, the creditors have not been advised of the pendency of this case, they have not been given the proposed plan, and neither the trustee nor the creditors have had an opportunity to question the debtor at the first meeting of creditors.

### C

Due process aside, there are other good reasons to deny confirmation of the proposed plan.

To promote uniformity and administrative convenience, the general order requires use of a form chapter 13 plan. *See* General Order 97–02, ¶ 2. This form plan requires the debtor or the debtor's attorney to fill in information such as the plan's term, the monthly plan payment, and the dividend to be paid to holders of general unsecured claims. On these points, the form plan provides:

> ... Debtor shall pay to Trustee the sum of $_____ each month for ____ months or, if the foregoing is left blank, the payments specified on Attachment B. The plan payments shall be all of Debtor's projected disposable income and shall continue for

---

**9.** This written election is contained in the Rights and Responsibilities agreement.

not less than 36 months. Unless the allowed unsecured claims are paid in full, the plan shall not terminate earlier than the stated plan term or 36 months, whichever is longer. The term of this plan will not exceed 60 months.

. . . .

**Class 7. General unsecured claims.** General unsecured claims . . . will be paid no less than _____% of their claim after payment of all other claims.

■■■ In this case, the debtor used the form plan. He inserted "$100.00" as the monthly plan payment but failed to insert a plan term. Further, he did not insert a percentage, whether 0%, 10%, or any other percentage, in the blank specifying the dividend payable to general unsecured creditors.

If a debtor desires to modify the standard provisions of the form plan, he or she may include those modifications on Attachment B to the plan. Any standard provision may be modified. Here, the debtor neither proposed modifications to the standard provisions nor specified the length of the plan and the dividend payable to unsecured creditors on Attachment B.

In the absence of basic plan provisions, such as the length of the plan and the amount to be paid on account of general unsecured claims, confirmation is impossible.

For example, if the length of the plan is longer than 60 months, the plan does not comply with section 1322(d) which prohibits plan terms in excess of 60 months. 11 U.S.C. § 1322(d). If the plan term is less than 36 months, the plan may be objectionable under section 1325(b) which requires, in the absence of payment in full of all claims, a minimum plan term of 36 months.[10] 11 U.S.C. § 1325(b). If the plan term is longer than 36 months but less than 60 months, the plan cannot be confirmed because good cause must be stated for a term in excess of 36 months. 11 U.S.C. § 1322(d). No cause has been alleged or proven.

Without knowing the length of the plan, it is impossible to determine if the plan provides for payment in full the priority claims as required by section 1322(a)(2). Also, if the debtor has non-exempt assets, it cannot be determined if the plan payments will be sufficient to satisfy the best-interests-of-creditors test of section 1325(a)(4).[11]

The failure to specify the length of the plan and a percentage dividend payable to general unsecured creditors strikes at the heart of the form plan's provision for payment of general unsecured claims. If, for example, a 36 month plan term and a 10% dividend is inserted into the form plan, the general unsecured creditors will receive no less than 10% on account of their claims. But if the filed general unsecured claims are less than those scheduled, the claim holders will receive more than a 10% dividend. This is because the debtor is required to continue making plan payments for the entire length of the plan even if the 10% dividend is exceeded.

Were the court to permit confirmation of a "base plan," that is, a plan that provided a stream of payments for a stated term of months and also paid general unsecured claims whatever remained after payment of administrative expenses, secured claims, and priority claims, two problems would follow.[12]

---

10. Section 1325(b) does not mandate a minimum plan length of 36 months. However, if all claims will not be paid in full, if the trustee or the holder of an unsecured claim objects to confirmation, the plan cannot be confirmed.

11. A review of the schedules suggests the debtor has no non-exempt assets. However, one of his assets is a personal injury cause of action. This asset has not been liquidated. Once the trustee and creditors have an opportunity to examine the debtor at the first meeting of creditors, they may determine that the debtor is likely to recover an amount in excess of the exemption claimed.

12. Both problems might disappear if the court delayed confirmation until after expiration of the claims' bar dates. Given that proofs of claim must be filed by nongovernmental creditors between 110 and 140 days after the order for relief (see Fed.R.Bankr.P.2003(a) & 3002(c)), and that proofs of claim must be filed by governmental entities within 180 days of the order for relief (see Fed.R.Bankr.P. 3002(c)(1)), the courts of the Eastern District of California confirm plans before the bar date expires. To wait until after the claims' bar dates would flout the Congressional directive that payments in accordance with the plan begin "as soon as practicable." 11 U.S.C. § 1326(a)(2). Also, delaying confirmation and payments to creditors up to six months would

General unsecured creditors would have no clear idea at confirmation of how much they would likely receive on account of their claims. Nothing can be more calculated to discourage the participation of general unsecured creditors in a chapter 13 case than telling them they may have to wait years to receive an unknown dividend after all other priority and secured claims are paid in full.

Second, if no dividend is promised to general unsecured creditors, determining whether the plan will pay then what they would receive in a chapter 7 liquidation is problematic. 11 U.S.C. § 1325(a)(4).

If the base is mathematically calculated and expressed as a specific dollar amount to be shared on a pro rata basis by general unsecured claims, compliance with section 1325(a)(4) is easily determined. But, general unsecured creditors still will not know what they are likely to receive from the plan unless they also know the total amount of general unsecured claims.

And another problem is likely to crop up. If a debtor agrees to pay, say, $5,000.00 on a pro rata basis to his general unsecured creditors, that debtor has no incentive to challenge any objectionable claims filed by those creditors. Although claim objections might pare down claims, the debtor will nonetheless pay $5,000.00. Why bother objecting to claims?

Merely requiring the plan to specify a percentage dividend is not a satisfactory resolution of these problems. Suppose a debtor schedules $100,000.00 in general unsecured claims and proposes a plan to pay a 10% dividend over 36 months to the holders of those claims. If only $50,000.00 of these claims are reduced to proofs of claim, instead of paying a total dividend of $10,000.00, the debtor will complete his or her plan after paying just $5,000.00. Such a debtor would be entitled to a discharge even though he or she did not make payments for the full 36-month plan term.

The form plan combines the base and percentage plans and avoids these problems.

likely cause motions for relief from stay by secured creditors to mushroom.

- General unsecured creditors receive no less than the percentage dividend promised in the plan.

- Because this minimum dividend is expressed as a percentage rather than a specific dollar amount to be shared on a pro rata basis, the debtor has an incentive to seek the disallowance of objectionable claims.

- Creditors know what to expect if a plan is confirmed and the dividend can be easily compared to the dividend paid in a hypothetical chapter 7 liquidation.

- If claims are less than scheduled, creditors filing proofs of claim will receive more than the minimum percentage dividend and the debtor will not be permitted to circumvent his or her promise to pay disposable income to creditors for a specific number of months. Keith M. Lundin, *Chapter 13 Bankruptcy* § 4.84, p. 4–182 (2d ed. 1994) ("This outcome is inconsistent with the disposable income test in § 1325(b).").

Judge Lundin describes such a plan as a "base or percentage plan, whichever is greater." After noting that base plans and percentage plans are in disfavor in most courts, his treatise acknowledges that "the base or percentage plan, whichever is greater" has evolved and is now probably the predominate form of Chapter 13 plan. *Id.*

It has been argued that a "base or percentage plan, whichever is greater" penalizes a debtor who underestimates his or her claims. If claims are significantly greater than scheduled, the debtor may be unable to pay the minimum percentage dividend. This may necessitate a plan modification.

If this is a penalty, it is not an unfair one. It is incumbent upon a debtor to file accurate schedules. When they are not accurate, the conclusions of the court and the parties in interest about the plan's feasibility and compliance with sections 1322 and 1325 may not be accurate. Under such circumstances, revisiting these issues in the context of a motion to modify the plan is entirely appropriate.[13]

13. In most cases where claims are higher than expected, the problem can be resolved by simply

### III. Conclusion

Therefore, confirmation of the plan will be denied at this time. Parties in interest have not been given notice that confirmation has been requested and they have had no opportunity to investigate and file objections to the plan. Even if all parties in interest had received sufficient notice of the plan and opportunity to object to it, it cannot be confirmed because it fails to specify the length of the plan and a percentage dividend to be paid to unsecured creditors.

For the foregoing reasons, the applications for approval of counsel's fee and confirmation of the chapter 13 plan are denied.

A separate order will issue.

extending the plan a few more months. Keith M. Lundin, *Chapter 13 Bankruptcy* § 4.84, p. 4–184 (2d ed.1994). Also, the form plan provides a streamlined procedure to modify a confirmed plan. It provides:

The first post confirmation modification sought by the Debtor, if approved by the Trustee, will be confirmed without hearing if the modification will not delay payment of a secured or priority claim by more than three months from the time payment would have been made un-

der the original plan, and will not reduce the original dividend, consistent with 11 U.S.C. § 1325(a)(4), promised on Class 7 general unsecured claims by more than 5% (for example, from 95% to 90%). All other and additional post confirmation modifications shall be requested by motion on 22 days notice to the Trustee and the holders of unpaid and allowed secured, priority, and general unsecured claims.