In re Tyrone & Diann ANDERSON, Rudi & Pamela Quinting, Eugenia Hawkins, Kimberly Ward, Samuel Jones, Jerry Holmes, James Bailey, Linda Jackson, Charlie & Christia Simmons, Roy & Verlinda Lee, Veronica Evans, Martin Charboneau, Benito Hassan, Brenda Brown, Nancy Brown, Michael Mayberry, Jeanette Miller, Betty Sue Fields, Elizabeth Thigpen, Debtors.

Nos. 98–58305–R, 98–60562–R, 98–61034–R, 98–61303–R, 99–42055–R, 99–42492–R, 99–42680–R, 99–43967–R, 99–44508–R, 99–44598–R, 99–46445–R, 99–48188–R, 99–48271–R, 99–48491–R, 99–48494–R, 99–48636–R, 99–49087–R, 99–49646–R, 99–49810–R.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Sept. 1, 2000.

Robert Stein, Southfield, for Debtors.

David Wm. Ruskin, Southfield, Chapter 13 Trustee.

*Opinion and Order Regarding Fee Applications of Debtors' Attorney*

STEVEN W. RHODES, Bankruptcy Judge.

In response to the Court's orders to show cause regarding his fee practices, the debtors' attorney, Robert Stein, filed fee applications in these nineteen chapter 13 cases. David Ruskin, the trustee in these cases, has filed objections to these applications. The Court concludes that the circumstances of these cases warrant denial of these fee applications. The first such circumstance is that seventeen of the nineteen applications were untimely filed and Stein has not established "excusable neglect." The second is that Stein's practice of taking fees from his clients postpetition without court approval violates the Bankruptcy Code and the Bankruptcy Rules. The third is that Stein's Rule 2016(b) statements in these cases do not fully disclose his actual fee agreements with his clients.

The Court will address the issue raised in the order to show cause relating to whether Stein's retainer practices violate the Michigan Rules of Professional Conduct, but the Court concludes that it is unnecessary to decide the issue.

Finally, the Court concludes that Stein may keep his $200 prepetition retainers but that he must disgorge his $300 postpetition retainers.

I. The Court's Order to Show Cause

This matter was precipitated by an order to show cause issued by the Court in these cases on November 15, 1999. That order provided:

It appears to the Court that in each of these cases, the debtor's attorney, Robert Stein, has accepted a retainer from the debtor, but has never filed a fee application as required. It further appears that neither the order confirming the plan nor the dismissal order (where applicable) awards any fee to debtor's counsel.

The Court concludes that these circumstances require further inquiry by the Court, and to the extent necessary in a particular case, the reopening of the case if it is closed.

Accordingly, IT IS HEREBY ORDERED that Robert Stein appear at a hearing and establish that the retainer in each of these cases was placed into a client trust account as required by Rule 1.15 of the Michigan Rules of Professional Conduct.

IT IS FURTHER ORDERED that on or before January 10, 2000, Robert Stein shall either return the retainer fee to his client pursuant to Rule 1.16(d) of the Michigan Rules of Professional Conduct or file a fee application as required by 11 U.S.C. § 330, Bankruptcy Rule 2016, and this Court's Local Rules.

IT IS FURTHER ORDERED that Robert Stein show cause why sanctions should not be imposed against him if it is determined that he has taken and used for his own purposes any of his clients' retainers without court approval.

A hearing will be held on Friday, January 28, 2000 at 10:00 a.m. in Room 1825, 211 W. Fort Street, Detroit, Michigan. If any fee applications are filed in these cases, they shall be heard at that time.

IT IS FURTHER ORDERED that any of these cases that are closed are hereby reopened.

### II. Stein Has Not Established "Excusable Neglect" for the Untimely Fee Applications

The order to show cause directed Stein to either return the fees to each respective client or file a fee application by January 10, 2000. Although Stein filed the required fee applications, only two of the nineteen were filed by the deadline set by the Court.[1] Seventeen of the fee applications were filed on January 18, 2000. At the hearing, Stein requested the Court to consider the untimely applications because his failure to comply with the deadline in the order was the result of excusable neglect. The Court must reject Stein's request.

The extension of a deadline in a court order is governed by Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure, which provides:

> Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request thereof is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

FED. R. BANKR. P. 9006(b)(1).

In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court addressed "excusable neglect" under Rule 9006(b)(1). The Supreme Court found that the rule grants a party "a reprieve to out-of-time filings that were delayed by 'neglect.'" *Id.* at 388, 113 S.Ct. 1489. The Supreme Court held that neglect encompasses both simple, faultless omissions to act, and omissions caused by carelessness. *Id.*

In addressing whether neglect is "excusable," the Supreme Court stated, "[T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 394, 113 S.Ct. 1489. The

---

**1.** The fee applications for *In re Quinting,* No. 98–60562–R and *In re Miller,* No. 99–49087–R were timely filed on January 6, 2000.

Supreme Court identified several factors to consider, including: (1) the danger of prejudice to the opposing party; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was in the control of the moving party; and (4) whether the moving party acted in good faith. *Id.* The Supreme Court noted that "inadvertence, ignorance of the rules, or mistakes construing the rules does not usually constitute 'excusable neglect.'" *Id.* at 392, 113 S.Ct. 1489.

■ Stein's explanation for missing the deadline was that the preparation of fee applications was a sudden burden for which he had to hire and train personnel. He further stated that he had hired someone to prepare the fee applications, however, she had a death in the family and ultimately quit. He then hired someone else to prepare the fee applications and thought that he was taking the necessary steps to assure that they would be timely prepared. However, he also stated at the hearing that he was unaware that he had missed the deadline. Stein offered no explanation for not filing a timely request for an extension of time.

The Court must conclude that Stein's failure to timely file the fee applications was not the result of excusable neglect. Although there does not appear to be prejudice to the trustee or the debtors due to the delay and the eight day length of the delay was relatively short, Stein's reason for the delay is neither excusable nor credible. The Supreme Court in *Pioneer* gave "little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date." *Id.* at 398, 113 S.Ct. 1489. *See also Harlow Fay, Inc. v. Federal Land Bank of St. Louis (In re Harlow Fay, Inc.)*, 993 F.2d 1351 (8th Cir.1993) (Reduction in staff does not constitute excusable neglect.); *Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310, 1314 (8th Cir.1987) (Employee

turnover does not constitute excusable neglect under Rule 9006(b)(1).). Moreover, the 56 days that the order to show cause allowed to Stein to file the required fee applications was itself a generous attempt to account for the difficulties that an attorney might have in filing nineteen simultaneous fee applications.[2]

■ Beyond that, the Court notes that Stein admitted at the hearing that he was unaware that he had missed the deadline. This raises serious questions about his credibility and good faith in trying to blame staffing problems for the missed deadline in this matter. In any event, his lack of awareness of the deadline is likewise not "excusable neglect." Quite properly, the Court insists upon compliance with all of its orders including those setting deadlines. The motivations would be perverse if an attorney could establish excusable neglect simply by claiming to be unaware of a deadline set in an order that the attorney actually received.

Finally, the Court also notes that in its experience, Stein's delay in filing these fee applications is not an isolated incident. To the contrary, this missed deadline is only the latest in a practice that regularly misses deadlines to file schedules, plans, necessary plan amendments and other required papers, and which has been sanctioned by the Court on numerous occasions. The Court properly views this missed deadline, and the asserted "excusable neglect" associated with it, in that context.

Accordingly, the Court concludes that these seventeen fee applications were filed untimely and that this warrants the denial of those applications.

The Court will now address the other circumstances warranting denial of the fee applications.

### III. Stein Improperly Collected Fees From His Clients Postpetition

An additional circumstance justifying the denial of these fee applications is that

**2.** *Compare* FED. R. CIV. P. 54(d)(2)(B) (providing that generally, a motion for attorney fees shall be filed within 14 days after entry of judgment.)

**20**

Stein improperly collected fees from these nineteen clients postpetition. Specifically, at the hearing, Stein disclosed that in each case after he collected an initial $200 fee to file the petition, he collected an additional $300 fee postpetition to file the plan and schedules. The Court must conclude that Stein's practice of collecting $300 in fees postpetition, without court approval, violates the Bankruptcy Code and Rules.

Pursuant to 11 U.S.C. § 330(a)(4)(B), in a chapter 13 case, "the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." Further, Rule 2016(a) requires an attorney seeking compensation from the estate to file "an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." FED. R. BANKR. P.2016(a). Finally, 11 U.S.C. § 1306(a) provides that any money that the debtor might have to pay to Stein postpetition would be property of the estate. When viewed as parts of an integrated structure of fee regulation, these provisions indicate a chapter 13 debtor's attorney may not collect fees from a debtor postpetition without a court order. To hold otherwise would undermine the court's authority and responsibility to monitor and control the fees of chapter 13 debtors' attorneys, and would interfere with the court's exclusive jurisdiction over estate property under 28 U.S.C. § 1334(e).

■ Accordingly, the Court concludes that an attorney may not take fees from a chapter 13 debtor postpetition without court approval. *See In re Pair,* 77 B.R. 976 (Bankr.N.D.Ga.1987) (Attorney's collection of post-filing attorney fees, without prior court approval, is in violation of the Bankruptcy Code, Rules and case law.); *In re Courtois,* 222 B.R. 491, 495 (Bankr. D.Md.1998) (Court approval is required for postpetition attorney's fees to be paid from estate.); *In re Fricker,* 131 B.R. 932, 941 (Bankr.E.D.Pa.1991). This law also compels the Court to reject Stein's attempt to defend his actions on the basis that "everyone does it."

## IV. Stein Filed Incomplete Rule 2016(b) Statements

■ The final circumstance indicating that these fee applications should be denied is that Stein's Rule 2016(b) statements in these cases do not fully reflect his actual agreements with his clients. 11 U.S.C. § 329(a) and FED. R. BANKR. P. 2016(b) require any attorney representing a debtor to file a statement of compensation paid or agreed to be paid.

On the Court's approved fee disclosure form, Stein confusingly disclosed that his clients agreed to a retainer with a "minimum of $1,200" and also disclosed, "Amount of retainer received $500." There is no attempt to reconcile or explain these different disclosures regarding the retainer. The statements further disclose that Stein will bill $150 per hour against the retainer and that the debtors have agreed to pay all court approved fees. Despite the ambiguity regarding the retainer, the Court infers that what Stein intends to disclose is a $500 deposit retainer and that the fee will be calculated at $150 per hour, with a minimum fee of $1200, all subject to court approval. In any event, nothing else is disclosed concerning the fee agreement with the debtor.

There are two significant issues that arise in comparing Stein's actual fee agreements and his filed disclosures regarding those fee agreements. The first issue relates to the $500 retainer. The disclosure made to the Court does not explicitly disclose that $300 of the retainer was paid postpetition. However, the agreement specifically sets forth Stein's practice of collecting "$200 when the case is begun and $300 before completing the filing." Moreover, although the record of these proceedings does not indicate how long this has been Stein's practice, it is clear

enough that for the many years that Stein has practiced chapter 13 bankruptcy, he has never specifically disclosed his clients' $300 postpetition payments, as required by Rule 2016(b).

■ The Court notes that it is Stein's practice to file the Rule 2016(b) statement with the plan, which he files after the petition and sometimes even after the 15 day deadline of FED. R. BANKR. P. 1007(c). Stein argues that because he has received $500 as of the time the disclosure is filed, his disclosure of a $500 retainer is technically accurate. Certainly it is accurate as far as it goes, but it is incomplete. It does not disclose the important aspect of the fee agreement regarding the timing of the retainer payments of $200 before the filing and $300 after the filing. This is not the full disclosure of the complete fee agreement that 11 U.S.C. § 329(a) and FED. R. BANKR. P.2016(b) require.

The result is that until now Stein has deprived the Court and the parties of the opportunity to act to correct the illegal practice of collecting postpetition fees from the debtor.[3]

The second problem relates to the method of calculating Stein's total fee. The filed disclosures suggest in a straightforward way that the fee will be calculated at the hourly rate of $150, with a $1200 minimum. However, the agreement specifically states that this $1200 fee includes "three office meetings, attendance at one trustee's and confirmation hearing and 5 phone calls" and that additional work will be charged at the hourly rate, currently $150 per hour. Once again, there is an ambiguity. The enumeration of specific services may be either merely illustrative of the services which typically amount to the $1200 minimum fee, with all services to be actually charged at $150 per hour, or a list of specific services to be performed for the $1200 fee. If the former, then there may not be any significant difference between the disclosure and the actual agreement. On the other hand, if the fee agreement is intended to identify specific services to be performed for the $1200 fee, Stein's Rule 2016(b) disclosure does not so state. This ambiguity in the fee agreement and, at least potentially in the Rule 2016(b) disclosure, can only create unnecessary confusion for Stein's clients, the trustee, other interested parties and the Court.

Moreover, if the fee agreement is intended to identify specific services to be rendered for the $1200 fee, the fee calculation method in the fee agreement is inconsistent with *Boddy v. United States Bankr. Court (In re Boddy)*, 950 F.2d 334 (6th Cir.1991), which held that under 11 U.S.C. § 330(a), the fee of a chapter 13 debtor's attorney must be calculated by the number of hours and the hourly rate. Indeed, the same can be said of that aspect of the fee agreement that provides for a minimum fee of $1200.[4]

■ Having found these two problems with Stein's Rule 2016(b) statements, the Court must address whether these problems warrant the sanction of denial of fees. On this issue, the United States Court of Appeals for the Sixth Circuit has

---

3. At the hearing, Stein contended that this issue was brought to the Court's attention years ago and the Court specifically approved his practice of obtaining postpetition retainers. He did not however submit any proof of this contention in the form of orders, transcripts or otherwise. Therefore, and because the Court cannot imagine having approved of a practice so clearly illegal, the Court must find that this is the Court's first opportunity to address the issue.

4. There is actually a third interesting difference, relating to the actual payee of fee. The disclosure suggests that fees are payable to "Robert D. Stein," the signatory on the disclosure. On the other hand, the agreement is more complex. It states that while the initial $500 is to be paid in cash or money order to Robert D. Stein, the trustee's disbursements are payable to "Robert D. Stein P.L.L.C." Nothing in the record suggests why the agreement is that way, why it is different from the disclosure, or whether the difference is material. Accordingly, the Court will not consider this matter further.

stated, "[T]he bankruptcy court should deny all compensation to an attorney who exhibits a willful disregard of his fiduciary obligations to fully disclose the nature and circumstances of his fee arrangement under § 329 and Rule 2016. The authority to do so is inherent, and in the face of such infractions should be wielded forcefully." *Mapother & Mapother P.S.C. v. Cooper (In re Downs )*, 103 F.3d 472, 479 (6th Cir.1996). This Court stated in *In re Florence Tanners, Inc.*, 213 B.R. 129, 132 (Bankr.E.D.Mich.1997), *aff'd in part, vacated in part on other grounds, remanded by Halbert v. Yousif*, 225 B.R. 336 (E.D.Mich.1998), *appeal dismissed, In re Yousif*, 201 F.3d 774 (6th Cir.2000), "In every bankruptcy case, debtor's counsel must understand that matters of disclosure and payment of fees affect the administration of justice in fundamental ways, and therefore must be addressed with the greatest seriousness, caution, and deliberation." *See also O'Connell v. Mann (In re Davila )*, 210 B.R. 727, 733 (Bankr.S.D.Tex.1996) ("Failure to disclose a fee arrangement under 11 U.S.C. § 329 or filing a false statement under Rule 2016(b) warrants denial of attorney fees."); *In re Meyers*, 169 B.R. 273, 275 (Bankr. D.R.I.1994) (All compensation was denied because the Rule 2016(b) statement contained "misleading and confusing information as to the amount of retainer received.").

In this case, it appears that Stein simply filled in the blanks on the Court's local Rule 2016(b) disclosure form. It likely never occurred to him to disclose how much of the retainer was paid postpetition or the details of the agreed hourly rate calculation, because the form does not specifically request that information. Thus, the Court cannot find that Stein exhibited "a willful disregard of his fiduciary obligations to fully disclose the nature and circumstances of his fee arrangement," as would by itself justify denial of fees under *Downs*. It is clear however that Stein did not prepare his Rule 2016(b) statements "with the greatest seriousness, caution, and deliberation," as required by *Tanners*.

Even though these problems by themselves do not warrant the denial of the fee applications, the Court must consider these problems in the context of the other problems addressed in this opinion. From that perspective, the Court views these problems as part of a pattern of problems that does warrant denial of the fee applications.

## V. The Ethical Issues Regarding the Retainers

The Court's order to show cause also raised the issue of whether Stein's practices regarding his retainers violate the Michigan Rules of Professional Conduct, which require that retainers be placed into a client trust account. MRPC 1.15(a). Stein admits that he does not deposit either the $200 prepetition payment or the $300 postpetition payment into his client trust account. Rather, he contends that he is not required to do so because these retainers are earned when paid.

■ Under Michigan law, a retainer is held in trust, as property of the client, until applied to the attorney's bill. See MRPC 1.15(a) ("A lawyer shall hold property of clients or third persons that is in the lawyer's possession in connection with a representation separate from the lawyer's own property."). Formal Opinion R–7, issued by the Michigan State Bar Ethics Committee on April 27, 1990, addressed treatment of retainers:

1. *Retainers.* A client consults with a lawyer about a matter. The lawyer agrees to accept the case and explains the costs and fees to the client, preferably in writing, MRPC 1.5(b). An agreement is reached and the client gives the lawyer a retainer to begin work.

Since the retainer is for work not yet performed, the retainer is unearned and *must* be deposited in the firm's client trust account. MRPC 1.15(a) specifically exempts advances of costs and expenses from deposit in the trust account,

but does not exempt the deposit of unearned attorney fees. If the Supreme Court had intended fee advances to be exempt from deposit, the Court would have so specified. A lawyer may not withdraw "anticipated fees." The lawyer must explain to the client that the retainer is considered a deposit, inform the client that withdrawals will be made for fees, and may not withdraw more than has been billed, *Grievance Administrator v. Sauer*, ADB 9–89, 12/8/89.

. . . .

If any portion of the retainer is unearned because it is paid in advance for legal services to be performed in the future on an hourly, flat or percentage basis, the retainer has not been earned and is not a non-refundable retainer, RI–10. See also, *Baranowski v. State Bar*, 24 Cal.3d 153, 154 Cal.Rptr. 752, 593 P.2d 613 (1979).

■ Accordingly, unearned retainers must be deposited into a client trust account, and upon a bankruptcy filing, the retainer is property of the bankruptcy estate. 11 U.S.C. § 541(a)(1); *Downs*, 103 F.3d at 478 ("Retainers paid to counsel for the debtor are to be held in trust for the debtor, and the debtor's equitable interest in the trust is property of the estate."); *In re Doors and More, Inc.*, 127 B.R. 1001 (Bankr.E.D.Mich.1991); *In re Pedersen*, 229 B.R. 445, 449 (Bankr.E.D.Cal.1999) ("Until the court has approved a fee application, any pre-petition retainer, flat-fee, or advance payment of fees for post-petition services must be held in trust.") (citing *In re C & P Auto Transp., Inc.*, 94 B.R. 682, 686 (Bankr.E.D.Cal.1988)).

■ A lawyer may not draw from the retainer until the fees are earned. Formal Opinion R–7 provides:

2. *Withdrawals after Accounting.* A lawyer works on a case and incurs fees. On a periodic basis, pursuant to MRPC 1.3 requiring diligence and promptness, and MRPC 1.4 on keeping the client reasonably informed on the status of the matter, the lawyer sends the client a billing statement accounting for services performed and fees earned.

If the fee agreement between the lawyer and client is clear and periodic statements to the client have been given to the client, the lawyer may withdraw the billed amount from the trust account. This is usually done by writing a check on the trust account for deposit in the lawyer's or law firm's business operating account.

In addressing the application of these rules in this case, the Court will first address the postpetition retainers and then the prepetition retainers.

■ In these cases, it is clear that the postpetition retainers that Stein received are unearned and therefore subject to the requirement of segregation. In part III above, the Court concluded that under 11 U.S.C. § 330(a), a fee approval order is required before an attorney can be paid any fees for postpetition services. It naturally follows that all fees for postpetition services in a chapter 13 case are "unearned" until approved by the court. *See also In re Florence Tanners, Inc.*, 213 B.R. 129; *In re Chapel Gate Apts., Ltd.*, 64 B.R. 569, 575 (Bankr.N.D.Tex.1986) ("[A]ny attorney who unilaterally withdraws against a retainer while representing a debtor in bankruptcy proceedings is plainly in violation of the strictures of the Code.").

■ Stein argues that the postpetition retainers are "earned" when paid because his bill exceeds the retainer when paid. However, because fees for postpetition services in a chapter 13 case are unearned until approved by the court, the Court must reject that argument. Moreover, the Court notes that there is a substantial reason to reject the factual basis of this argument. Although his fee applications in a few of the nineteen cases reflect fees equal to or greater than $500 for services rendered through the filing of the plan and schedules, most of these fee applications

reflect less than $500 in billed fees through that point in the process. Nevertheless, the Court does not rest its conclusion that these fees are not fully "earned" (and therefore that the fees must be segregated) on that narrow factual premise. Rather, as developed above, the Court concludes that these postpetition fees are not "earned" until approved by the Court pursuant to § 330(a). Accordingly, if an attorney takes a postpetition retainer, whether properly pursuant to court order or improperly as here, that retainer must be deposited into the client trust account.

■■■ On the other hand, the record is less clear on whether the $200 prepetition retainers were required to be deposited into Stein's client trust account because it is not clear whether Stein collected the $200 retainer before or after performing the services in preparing the bankruptcy petition for filing. Stein's utilization of the term "retainer" in his fee agreement suggests that he collected a deposit before performing any substantial services. In that event, as developed above, Stein would be required to deposit the retainer into the client trust account. He could then, after performing prepetition services, legally render a bill to the client for those services and withdraw fees from the retainer, provided that the billing and the withdrawal from the retainer are done prepetition.

■■■ However, if Stein performed prepetition services and at the same time collected fees for those services, he would not have been required to deposit those fees into the client trust account. The same result would apply to fees billed and collected from the debtor after the prepetition services were rendered, but only until the petition is filed. At that point, the automatic stay would prevent the debtor's attorney from billing or collecting for such services. 11 U.S.C. § 362(a). Thus, fees for prepetition services that are uncollected when the petition is filed can only be obtained through 11 U.S.C. § 330(a).

For the benefit of the chapter 13 bar, the Court has set forth its basic expectations regarding retainers in chapter 13 cases and the Court fully expects the bar to comply with these guidelines in the future. However, for three reasons, the Court has decided not to address whether Stein's practices regarding his retainers constitute additional grounds to deny his fee applications. First, as noted, the record is not sufficiently clear for the Court to determine whether Stein's practices in regard to his prepetition retainers violate the Michigan Rules of Professional Conduct. Second, the enforcement of those rules is within the jurisdiction of state authorities and the Court will refer the issue to those authorities. *See* Michigan Rules of Court 9.101–9.131 (1999). Third, there are sufficient other circumstances that warrant denial of the fee applications, as set forth above.

## VI.

In summary, the Court concludes the following:

■■■ (1) The agreement by which the debtor engages the services of a chapter 13 attorney must state the terms of the agreement without ambiguity and in language that the client can reasonably be expected to understand.

■■■ (2) The agreement may provide for the payment of a reasonable prepetition retainer amount, provided that the conditions for making withdrawals from that retainer are clearly set forth in the agreement.

■■■ (3) All prepetition retainers must be placed in a client trust account. MPRC 1.15(a).

■■■ (4) Prepetition, fees may be withdrawn from the client trust account only for services that have been performed and billed. Otherwise, the retainer must remain in the client trust account until the Court enters an order approving fees.

■ (5) An attorney may bill and collect fees for services performed prepetition without depositing the fees into the client trust account only if the fees are collected either when the services are rendered, or after that but before the petition is filed

■ (6) The attorney's Rule 2016(b) statement must be complete and accurate in disclosing the fee agreement and any payments.

■ (7) Postpetition, an attorney is prohibited without a court order from collecting fees from a debtor, whether as a retainer deposit for future services or as a payment for past services.

■ (8) The fees for an attorney for a chapter 13 debtor will be awarded in either the order confirming the plan or in an order entered upon a properly filed fee application. To the extent of any unused funds on deposit from a prepetition retainer, fees awarded by the court may be paid from that retainer.

### VII.

For the reasons stated above, the Court concludes that the fee applications filed by Stein in these cases must be denied.

■ There remains the issue of whether to order disgorgement of either the $200 prepetition retainers or the $300 postpetition retainers. It is clear that the $300 postpetition retainers must be disgorged because there was no arguable justification for them. It was illegal for Stein to take these retainers, as he should have known, and the fact that he took postpetition retainers was concealed from the Court in his Rule 2016(b) disclosures. Perhaps more importantly, the $300 postpetition payments must be disgorged because the fee applications that would have authorized the payment of such fees are denied.

■ As noted above, the circumstances surrounding the $200 prepetition retainers are more ambiguous. It appears from the fee applications that Stein did earn $200 for the prepetition services that he performed in each case. Thus if he had deposited the $200 retainer into his client trust account as required and then billed his clients prepetition $200 for services performed prepetition, he would have been entitled to take $200 prepetition from the client trust account. On balance and to give Stein the benefit of the doubt, the Court will allow Stein to keep the $200 prepetition retainers.

Accordingly, Stein is ordered to disgorge $300 in each of these cases to the trustee within 30 days. Upon a motion establishing good cause, the Court will extend that deadline, provided that the motion is filed before the deadline.

The Court will conduct a further hearing on whether the trustee should pay these disgorged funds to the debtors or to creditors. The trustee shall hold the disgorged funds until the further order of the Court.